Camp Hill Borough Republican Association, et al. v. Borough of Camp Hill. Please proceed. Good morning, Your Honor. May it please the court, Isaac Wakefield on behalf of the appellants. I'd ask to reserve two minutes for rebuttal, please. I'm sorry, I didn't hear two? Two minutes, yes, please. Done. The courts have long acknowledged that signs pose distinctive problems justifying regulation. So, like thousands of other municipalities across the country, Camp Hill Borough enacted zoning-related restrictions on signage in the borough's jurisdiction. In doing that, the borough was cognizant of its obligation... The regulations in a lot of places, it just seems like they're trying to answer every single possible question, you know, from, yes, some are personal expression, yes, some are temporary, yes, there's some overlap, then there's holiday decorations. I could, you know, I could go on and on and on. And then once this happens, you've got somebody who's supposedly out there trying to enforce it and trying to find a violation. I was telling Judge Jordan yesterday, it reminded me of a famous episode on 60 Minutes where somebody is in England trying to find someone who's not cleaning up after their dog because the dog was fouling the footpath. And it makes it very difficult to, when you look at town of Gilbert and city of Austin, it makes it very difficult to try to find out where all of this fits. So, in effect, what is your theme as to why this should be overturned, this decision? I believe that the district court's ruling should be reversed primarily and principally because the fundamental question in this case is one of content neutrality versus a content-based regulation, as it is in most First Amendment cases, of course. And in this instance, what the district court did and what the appellees lobby in favor of is the application of a rigid need-to-read-the-sign test in order to determine whether this sign is content-based or not. Jump right in here and tell us why once you, and I'll say you, not you personally, Mr. Wakefield, but your client, chooses to select a category of signs for a particular treatment and heads this as personal expressions. Why doesn't that, just right off the bat, indicate, as your colleagues on the other side of the V say, that it is content-based. These are, this is not applied uniformly to all signs. There's a category of personal expression, and you got to look at it and understand, is this a personal expression in order to know whether or not it falls in that category? It is ergo content-based. Yeah, as opposed to just a temporary sign. I mean, okay, you're sitting at a bar, and somebody says, I'm for X candidate, and the event coming up is an election, and I want to put signs in my yard, and they're telling me I can't put more than two signs up in my yard. I really want to support three candidates, and so don't you have to look at the content of that, my expression, I'm favoring this candidate. How is that content neutral? So I think that goes, excuse me, to the rigid test that was established in Reed, and then I think softened in City of Austin. What City of Austin said, and what this court carried forward in the Mazo case, which was not a signed case, but was a First Amendment case, is that you may still look at the content of a sign and have that sign still be content, or have that regulation be content. You are correct. City of Austin softens it and says, for some very limited purposes, you can look at the sign to determine whether it's on or off premises. But City of Austin doesn't line up with your definition here of on-premises sign. In what sense is Doug Mastriano on-premises of the homeowner? Are we supposed to be differentiating people who put out Mastriano signs sincerely versus insincerely? Because the election isn't happening at the person's house. So there is a category of on-premises sign, but your ordinance doesn't line up with the way City of Austin treated some of them differently. It's not about carrots sold here or something like that. Yeah, I think that's accurate. I can see that the types of signs at issue in these various cases is slightly different, but the principles apply equally across the board. All right. Well, content-neutral, the only thing that City of Austin will let you do is say, if it relates to, you know, Eat at Joe's with an arrow here, that's a little different from Eat at Joe's quarter-mile down the road, right? But you have a bunch of content-based carve-outs here. You've got security signs. You've got warning signs. You've got directional signs. You've got holiday signs. And this is only for non-commercial, so you've got commercial signs treated differently. Why don't all five of those carve-outs, you're going to need to address them maybe separately, make this ordinance content-based? So with respect to, I want to make sure that there's something that's not lost on the court. It was lost on the district court, I think, and that is within the category of a temporary sign, a personal expression sign is a subset of that, so to speak. And the express definition of a personal expression sign encompasses any non-commercial temporary sign. So commercial is clearly a carve-out. But are you saying that warning, directional, security, and holiday don't fall within this? Because they're listed elsewhere in the statute. I am saying that. And the basis for that is because all of those are defined in ways other than a temporary sign would be or a temporary personal expression sign would be. And they're defined as to things other than content, such as their permanency. What an unusual word choice, Mr. Wakefield. If you were attempting to make a distinction between commercial and non-commercial signs, why didn't the borough say commercial and non-commercial signs? Why did it say personal expression signs, which seems to be quintessentially content-based? It's almost like waving the red flag in front of a bull. Hey, we're going to regulate personal expression. Come get us. If there wasn't some purpose in identifying it as personal expression, why on earth choose that language? The only thing in the record about why that language was chosen was that the borough relied upon a model sign ordinance that's put out by a county within Pennsylvania. Okay. That's where that term came from. But the holiday limits don't appear to be the same as the limits for these personal expression signs. There's not this 60 days before, 30 days after. Right? Correct. They have their own standard. They have their own standard. But seeing Merry Christmas or Happy Halloween, or there's a big happy birthday sign, a series of letters in the record, that's a different kind of content. Right? It can be. The way that the holiday signs or holiday displays is defined is broader. It encompasses any number of types of holiday decorations, not signs alone. And I think there's enough in the ordinance, although there's no testimony in the record from the zoning officer tasked with enforcing this, that one of the examples you gave, Judge Bibas, with Happy Halloween or whatever on a sign, may in fact qualify as a personal expression sign, depending upon what it is. I mean, if it's... I don't know if you advanced this before, but this is so confusingly written that I'm wondering if we're running almost into a vagueness problem here. In theory, you could have consistently interpreted and enforced it this way. In practice, it looks like your inspectors went around looking for political candidate signs, and there's a whole bunch of Halloween and Happy Birthday signs and stuff in the record. And it doesn't look as if you're enforcing against that, and you didn't appear to have argued that before. Are you outcrying Penn into the fire, out of Scylla into Charybdis, just that now it's a content-based, you're leaving the Happy Birthday signs alone and you're enforcing against the political signs? We, of course, don't have a ruling in this case in the district court on the issue of vagueness. That's something that the court reserved based upon the fact that the judge determined that she thought they were content-neutral and that strict scrutiny would apply. We certainly don't think they're vague. There is no evidence in the record that the zoning officer enforced this in some sort of inequitable way. Your argument on the other side is you say warning, directional, security, and holiday are defined in some content-neutral ways, but then you admit that holidays are temporary things, and some of the holiday decorations I gave you, your answer was, well, I guess those would be based on content. So it looks like you've got to defend the holidays here for different treatment, and then you definitely have to defend the commercial where it looks like commercial speech is getting better treatment here. You can put a sign up for 30 days, take it down for one. Put it up for 30, take it down for one. You can have it up for more of the year. You can have it up for longer. And I seriously doubt the officers are going around every day to check whether the signs have been taken down for a day at a time. Can you treat the commercial signs better than non-commercial signs without being content-based? No, I don't think that you can. And I think that was the distinction that we were drawing with respect to a personal expression sign being non-commercial speech and other temporary signs being commercially oriented speech. And I don't think, if you read the strict language of the ordinance, which I think the court is required to do, the design of the ordinance was not to allow for a commercially oriented temporary sign to be put up, taken down, put up, taken down, put up, taken down. It is a temporary sign, which by its terms is defined as a sign that can't be put up for more than 30 days. Well, it may not have been designed that way, but it can certainly, within the bounds of the ordinance, be treated that way. So, once again, you know, why should we look at what you're asserting, hey, this is what we meant, and not at what you did and said. It's arranged in a fashion that, as the district court observed and was no doubt argued to, this allows for virtually indefinite advertisement of commercial speech, but non-commercial speech, personal expression, doesn't get that benefit. I simply think that you look at the express language of the ordinance, which is required to do, and which the zoning officer is required to do in his enforcement, and there's nothing in the record to show that that hypothetical was actually occurring. This is a facial challenge, right? We're not dealing with a factual challenge. We're dealing with a facial challenge. The district court looks at it and says, on its face, this is what you could do with commercial speech, and you can't with non-commercial speech. Commercial speech comes out ahead. Why isn't that a problem? I think you have to apply the strict language of the ordinance. That's what you're getting pressed on. If you apply the strict language of the ordinance, you can do just what the district court said. Put your sign up, leave it up for 30 days, go take that, put it back up. And you can't do that with a non-commercial sign. You can put up a new sign, which I think is what's contemplated by a temporary sign. So if it's 30 days and it has to come down, you can put up a new sign, and then there's an issue about whether or not the zoning officer can enforce that. You agree we're either in content-based scrutiny land or we're in content-neutral intermediate scrutiny land. Yes. And under either of those tests, the burden is on you to justify the ordinance. And how does safety and aesthetics become compelling government interests under strict scrutiny or substantial government interests? I can see safety perhaps being a substantial government interest, but how is it compelling? I think all of the case law, sign case law anyway, talks about aesthetics and safety as being important government interests. The compelling, I would concede that we don't have any appellate precedent that establishes either traffic safety or aesthetics in particular. It's important, but the burden's still on you, and you didn't make a record here. We have these giant skeletons in the record in terms of traffic. I might think those are more distracting than some small political signs. How have you discharged your burden even under intermediate scrutiny? I think the record on that extreme example was that we don't actually know how that would have shaken out. It may not have been lost. If we don't know, then you lose. I mean, if we don't know how a giant Frosty the Snowman or Rudolph the Red-Nosed Reindeer with a flashing nose would fare, you lose. My point on that is that the zoning officer is the one who's tasked with enforcing that and has the discretion to decide it, and we don't know how that would come out. All we know is it's enforced against these appellees. Yeah, it looks like you land yourself in vagueness land there, right? Don't just walk right into a vagueness problem if you say, well, enforcement officers will decide whether a 20-foot inflatable Frosty is more of a distraction than a small sign for a political candidate. My time is up. I may have quickly responded. Wait, please do let him respond, and then go ahead. Yeah, go ahead. So on the vagueness issue, I don't want to get too distracted from what's actually being argued here. The argument on whether a provision was vague or not was oriented around one element of this ordinance, which is the one that the appellees challenged, which was, what's a singular event? What does that mean? Well, yeah, but in front of us, you're arguing, trust the enforcement officer. We're dealing with a facial challenge, where on the face of it, it does appear you could have a holiday sign or decoration that's gigantically distracting, and you could get in trouble for having a political sign. I mean, maybe the better way to ask this is, let's actually assume we're even under intermediate scrutiny, okay? And I'm not sure that they're the same for the number issue and the duration issue. Those could be different, and we don't have all the time in the world to explore that. But let's assume we were under intermediate scrutiny. How is the ordinance narrowly tailored? And even if we were to accept that the traffic and aesthetic issues were substantial government interests, and you've got case law to help you on that, how is it narrowly tailored to that end, to say, look, you can have your political sign, but you better get that thing down. And you can only have two of them, because if you've got three, people are going to be driving off the road. It's so distracting. Well, in our particular case, what we're dealing with is a situation where the ordinance was approved ahead of time by these various committees, and they looked at these scenarios. They looked at models. They took a number of different things into account. They're not obligated. But he's questioning good faith. That's just not even in front of us. To your point about narrowly tailoring, because I think that's where your question is oriented. Yeah. They're not required. The borough isn't required to prove that the restrictions that it chose are the least restrictive alternatives. No, but you have to show they're narrowly tailored. And in this instance, we have a sign limit on the number of signs, which would reduce visual clutter. Could you have said, you get one sign. One sign. You get one sign, 10 inches by 12 inches, and say that's narrowly tailored? That may be plagued by other constitutional concerns and over-breath and things like that. But one personal expression sign. One sign we call personal expression. You get one of those. Small one. Could you do that and say that's narrowly tailored? Not on the record that we have, I don't believe. But the case law says that when you're talking about intermediate scrutiny and you're looking at narrowly tailoring, the legislative decisions of the governing body are entitled to some level of deference. And you look to whether or not the goals, the substantial goals, the substantial interests are more achieved or more achievable. All your record shows here is that you cut and paste to the sloppy ordinance from somewhere else. How is that enough to establish tailoring? I don't think that's true, Your Honor, from the record. I think they did look at model ordinances for portions of it. But it's definitely a substantial exercise in independent judgment on the part of these committees. There was a lot of discussion about what do we do with temporary signs that are flying all over the downtown area of Camp Hill, sandwich boards, other temporary signs. That was actually the genesis of all this. But then there were other people who said, hey, you need to regulate, much like the appellees here, you need to regulate political. I think it set those political lines out separately for special treatment, which, of course, the borough can't do. I mean, that's that is certainly a content based restriction. All of that analysis was done. So if you roll everything that's personal expression into one category instead of separating out political signs, then you're OK. I mean, the district court thought that was problematic by broadening it out. You didn't save it. Well, so where was the district court wrong in saying, look, if by adding in a in this house, we believe sign to a more traditional I support this candidate sign, you have not changed it from a regulation of content like looking at content based personal expression in a way that is unconstitutional. The district court was wrong in two respects there. The first is, I think the district court failed to pick up on or at least didn't address the catch all non-commercial distinction we're making. But that's that's that's that's your best argument is that we've framed this in a way that it's really we called a personal expression, but it's really commercial versus non-commercial speech on the temporary signs. Yes. The second way that the court aired and then I'll close unless there are other questions was in drawing too close of a comparison between our that is the borough's ordinance and the ordinance in play it in read the ordinance in play. Read very, very specifically and the minutiae separated out content based categories. The categories were specifically and exclusively defined by the nature of the speech. The content of the speech, political speech, ideal or political science, excuse me, ideological signs and certain directional signs. They all had different standards in ours. That's not the case. I apologize. I have I have one more. And then I know Judge Amber had a question in the in the temporary signs category. There's a division for residential lots. There's a division for non-residential lots. And then there's a vision for personal expression signs, right?  What in that division would lead one to think, oh, this is about commercial versus non-commercial speech. For personal expression signs specifically. Well, just across the board, there's there's not a division between commercial and non-commercial speech. There's a division that says, hey, some temporary signs are going to be on residential lots and they're going to be regulated under C1. Some are going to be on non-residential lots. We're going to regulate those under C2 and then some are going to be personal expression signs. We're going to regulate those under C3. That looks like. It has nothing to do with commercial versus non-commercial speech. Excuse me. It's addressed twice in the ordinance. The first would be in the definition of personal expression signs 802, I believe, which is where all the definitions are. And in the section that your honor just referenced specifically, it says personal expression signs shall be non-commercial. So it's it's set out separately. You can say they they shall be non-commercial. But to say personal expression be non-commercial is not the same as saying and and all non-commer and all non-personal expression signs shall be commercial. You get what I'm getting at? But when we're talking about the definitions section specifically, personal expression sign says all non-commercial messages. We talked about it a little bit or touched on it, but I keep wrestling with how is this sign ordinance any different than what's in Reed v. Town of Gilbert? Whereas we got personal expression signs here and Town of Gilbert has ideological signs and those are deemed to be content based in Town of Gilbert. How do you distinguish that from what we have? I think it goes to Judge Jordan's question a little bit ago about sort of does the breadth of the category matter or does the breadth of the sub subsection matter? I think the answer is yes. In Reed, again, you had very specific sections that were defined in categories that were defined exclusively relative to the topic or subject matter conveyed in the speech. So does the sign have a political statement on it? Does it have an ideological statement on it? Is it is it a directional sign relative to a specific qualifier? But if you got a sign in the yard for a particular political candidate, in this case, one of the persons, it's Mehmet Oz and Doug Mastriano. Doesn't that indicate a favoring a particular ideology, if you will? That's the word used in Reed. But I mean, a particular point of view, a particular political point of view, how is that any different than what's in Reed? Because in our case, with respect to the definition of a personal expression sign, it includes anything that might be a non-commercial message. I hate to use the example, but I love puppies would be a non-commercial interest that you're expressing and would qualify as a personal expression sign. There's nothing in the record and there's nothing about how would you know? How would you know that you were dealing with a personal expression sign that was non-commercial as opposed to a commercial sign? If you didn't have if you didn't if you didn't weigh into the content, you didn't have to read it to say this. I love puppies. It doesn't say I love puppies and buy one here. Therefore, it's OK. Because because what has happened after city of Austin and going forward has been a softening of that test that the need to read test. It may be a softening of a test, but it's not the elimination of tests. And you admitted pretty darn good. Same on premises that city of Austin licensed. That's true. But Matt Maisel also was not about premise off premises distinction. It was about it wasn't about signs either. Correct. But it was about First Amendment speech and whether it was content based or content neutral. And in that case, the court said, you can still take into account the words on the sign or the words on the ballot, whatever we're talking about there, as long as you're doing so in furtherance of neutral line drawing time, place, manner restrictions. And we've cited case law on the event specific sections of our ordinance that came after which said, look, if you draw a distinction between an event and a non-event oriented side, that doesn't even come close to being content based restriction. OK. All right. Thanks very much. Thank you. We should have on Zoom. Council. Mr. McHale. For. Good morning. I'm Mark Scarringi, a Campbell Republican Association council. I want to introduce yourself and proceed. Good morning, Your Honors. Mark Scarringi on behalf of the plaintiffs and the appellees. And I just like to address quickly, briefly, some of the comments that I heard and questions. Judge Bibas was talking about the enforcement that occurred against political yard signs and shows that the only enforcement that has occurred regarding the sign ordinance occurred addressed political yard signs. These can be. But you don't you haven't made Mr. Scringey your class didn't make an as applied challenge here. This is a facial challenge, right? That's correct. OK, well, then let's stick with the let's stick with the ordinance because what has or hasn't happened seems to me irrelevant. If what you've got is a facial challenge on your facial challenge. Go straight to Mr. Wakefield's assertion that this is really a commercial versus non-commercial speech, a longstanding understood divide in the law. That's all that's being regulated. And so why is everybody so upset? What's the what's the response to that? Yeah, well, the the definition for temporary sign in the ordinance is not restricted to commerce or commercial. So that is a big problem with this ordinance. The only time the word commercial appears is unless it's dealing with commercial zones is in the personal expression signs. They have to be they have to be non-commercial messages. And so. So that's the big problem with with the ordinance. Speak directly, Mr. You know, Mr. Wakefield just barely a moment ago said, you know, that's just not so in the definition section and in the C-3 section, which is dedicated to personal expression signs, you'll see reference to non-commercial speech. It's telling you that that's it's indicating to you that that's the real dividing line. What's your response to that? Yeah, well, that's where the commercial is in the definition section for personal expression signs. And then it also appears in 805 C-3D when it's talking specifically about personal expression signs. The word commercial or restrictions to commercial messages does not appear anywhere else in the ordinance, including in the definition of temporary signs, including in the section 805 C-1 and 2 that talks about temporary signs on residential lots and non-residential lots. And don't forget about all of the other categories in section 805 from address signs to security and warning signs to holiday signs. But those sound like content neutral groups, you know, a directional arrow or stop, you know, those look more like the classic on premises, off premises in city of Austin security, you know, a warning dog here directions, you know, turn left to enter driveway or children at play. Those those don't look like classic content based groups. Right. Is there anything content based here apart from commercial non-commercial? They're all content based groups. So if you put up a yard sign in your yard that says beware of dog, you need to check the ordinance to determine in which category your sign fits. And so you have to read the ordinance, interpret the ordinance and that city city of Austin said specifically having to read the sign and read the ordinance is not enough to make it content based. Your argument below was all based on that and city of Austin blew that away. Right. Well, city of Austin kind of reinterprets the read the sign rule in read city of Austin didn't reverse read. And and so with with my argument, just as Thomas, just as Thomas thought there was a big cut back there. I mean, he was the author of read and he was a dissenter in city of Austin and he was pretty unhappy with what the majority did at city of Austin. So at at the at a minimum, you'd have to say, as your colleague, Mr. Wakefield has put it, it's softened the read rule and it said you could read you could have circumstances where you have to read the sign to know whether you're on premises or off premises or in this case, whether you're a directional sign or a security sign or a holiday sign or a personal expression sign under city of Austin. That's okay. But the city of Austin says it's okay. So since that argument is you're deprived of that argument, or you can take it as a given for purposes of discussion that we thought you weren't going to get much traction on that. What's, what's your pitch for why this is still content based in the way it's designed 805 is content based and therefore unconstitutional. Yeah, because, because, as I was saying those eight categories are based upon the content topic or message and in city of Austin identified a long body of case law that holds that on premises off premises distinctions are content neutral, but not so with directional security and warning the beware of dog sign that we're using in the example I have to find in which of the eight categories. That sign fits and how do I know I have to understand the content, the topic or message, the message of the beware of dog sign is just that it's beware of dog, it's the message is the topic is the content. And so I've got to find in which of my categories that sign fits and I do that for all of these songs for, let me ask you this, Mr screen G if you, if they had, if they had made their, if they had framed their ordinance. On the lines that Mr Wakefield asserts they really did, which was, it's temporary signs are really saying, making a distinction between commercial and non commercial signs that that's what temporary signs are temporary signs are defined as quote, and on premises sign that expresses an opinion interest position or other non commercial message, close quote. That that that's really saying temporary signs are to be understood as separating out between commercial and non commercial signs personal expression being that non commercial everything else being commercial. If that if that were really the case, would, would your argument lose would they would you acknowledge okay well that's not really content based in the traditional sense that's a division that can stand. No, because the sign ordinance gives much more generous regulations as to number and duration for commercial signs that, and the the trial court judge talked about that during oral argument and that was part of her holding in her decision. All right, you know, with security warning and directional we have the possibility that those might pass strict scrutiny those don't seem to have been focus of the decision below your record doesn't have much on those you do have a lot on holiday signs. Oh, our holiday signs content based our holiday signs treated more generously or the holiday signs. You are made of durable materials are the holiday signs enforced in this way or in a facial challenge here have more generous time limits for skeletons or Merry Christmas, Happy Birthday, then then the political signs. Holiday signs, like all of the other categories are absolutely content based, there is a category for holiday signs that's the that's the topic of the category. So, if a sign in my front yard says Merry Christmas, I am expressing content I'm expressing Merry Christmas that's content. That's a topic. Oh, and it's a message. Merry Christmas is my message. So how is my sign regulated, I've got to go to the ordinance, I've got to go to 805. I've got to find the subsection that applies to my Merry Christmas sign by reading all of the other content topic message titles to the categories. I get the holiday signs, and I see there is no numerical limit to the number of Merry Christmas signs that I can have in my front yard, but I'm limited to to reelect Joe Biden signs in my front yard. I also see there is no effective durational limit on my holiday sign. If you read the definition for the durational limit for holidays, it's seasonal whenever holiday merchants merchandise can be acquired, which is year round. So, there is effectively no durational limit on holiday signs there is expressly no numerical limit on the number of holiday signs. All of this is content based and we can go down through each of those categories and 805, and I can show you where there are no numerical limits on security and warning signs I can have as many no trespassing signs in my front yard, as I desire, and I can have them up there for ever. There are no durational limits to no trespass signs, children at play signs, anything pertaining to security and warning. And so I can do the same for directional signs parking in rear party out back. There is no limit. There is no durational limit that to the severe limits imposed upon political yard signs that are related to a campaign or election. They're much more severely regulated than all of these other signs, based upon the topic of the sign. Is that true with that's true for numbers that's true under see one a, as well as the durational limits under see 3d is number for example, where you take a look at city of Austin, you can look at content in some ways, in order to determine whether you're drawing neutral lines. And isn't number just even you're looking at contents, whatever it might be it's a personal expression sign. And, but you're all you're doing is looking at it to determine the neutral line, hey, no more than two per yard. Well, in order to get to analyzing or thinking about the number. You have to find the category, you have to figure out where your sign fits based upon the content topic or message of the sign. So, in the example I was giving you, I have a Merry Christmas sign. I don't go to the temporary section under 805 c one a, it doesn't fit there. It fits under holiday signs. And when I go under holiday signs in a separate section of 805 G. I see there are no numerical limits and this these are undisputed facts that there is no dispute that there are no numerical limits on holiday signs on security and warning signs on direction signs. Can those other side types be illuminated. Because personal expression can't be illuminated. There are no restrictions in 805 that prohibit the illumination of the signs listed in 805. So, for example, if you look at 805 G for holiday decorations. You're not going to see a prohibition on illumination. I will make I'll make a correct. What I just said, if you look at directional signs and 805 G, you will see a prohibition on illumination. How about, how about the, the, what the sign is made of the, your colleagues, you know, have noted that the non durable materials piece the definition of material signs. Does that, does that make any difference in, in determining whether we're dealing with content based or non content based because it would be perfectly rational for a government entity to say, you know, we just, we, we're going to treat all signs that are made of non durable materials. As being non permanent and subject to different kind of limits than things that are made of durable materials. Well, whether the sign is durable or non durable is not a content based distinction. Right. But that's not what we're talking about in this ordinance. Well, that's what they're talking about. That's why I'm trying to get you to talk about it because they're saying to this. Why not. Because it. Whether the signs are durable or non durable. As soon as you say the way we have interpreted it, that, that moves into facts, and I'm trying to keep you on facial, I'm trying to test your position here, because one of the positions, I think being put in front of us is we're making a distinction between, you know, stuff that is, is, is going to be made of durable material, and, and therefore it's not temporary in that sense, and stuff that, you know, was a paper sign that could melt in the rain or plastic that it did it would tear off of its little route and blow down the street and make a mess. That's non durable. And we, and that has nothing to do as you just said with what's written on the sign. We're making a distinction based on that the way the sign is made the stuff that's made out of it and we're allowed to do that. What's wrong with that argument. When they present that and say that's, that's the very definition of temporary non durable and we should be allowed to do that. Well, I think, I think regulating as to the durability of the sign is probably leaning in favor of a content neutral distinction, but that is not the distinction that has been made in this case, the temper. Under section 806 of the ordinance, the, the borough has plenty of sections and subsections to regulate signs based upon their physical characteristics, the material construction of the sign the location of the sign the area, the height of the sign. Illumination. All of that is an 806 they can also remove on safe on lawful or abandoned signs. So, the borough has already regulated on issues pertaining to the construction and the material of the sign and that's an 806 that's that's not before this court. Did they make that argument in the district court was durability and issue argued in the district court. No, that's, that's why maybe I'm a little bit perplexed by the argument here today this is all new to to the case. We never have dealt with the distinction between durable and non durable I'm not even sure if those words are in the ordinance or not we've never. Well they're in the ordinance. The word. Yeah, the temporary signs are different from other signs the borough has argued, this is their assertion because they are not permanent and made out of non durable materials non permanent in nature, citing I think section 806 G. Well, the definition for temporary sign doesn't include the word durable or non durable it just says a type of non permanent sign. If I go to 806 gene, I think that's where the court is directing me 806 G is the removal of unsafe on lawful or abandoned sign. So, when counsel for the appellant earlier was talking about one of the real well let me let me quote you the language, I think, and you you've got that in front of you, you'll, I only have an excerpt here. Does 806 G speak about every sign quote, I mean every sign paren except allowed temporary signs, close brand shall be constructed of durable materials, close brand. Oh wow. 806 G one a on written notice by the zoning officer the owner person or for maintaining a sign shall remove the sign will becomes unsafe is in danger of falling become so deteriorated that no longer serves a useful purpose communication to turn by the And then, and then subsection two is about abandoned sign so know there's the words durable and non durable do not appear in 806 gg, but Okay. See the instruction of sign. Aha. Okay. Every sign, except allowed temporary signs shall be constructed of durable materials. Sorry, I took you down the wrong path, which NG instead of F. So, is that that it's in their opening brief that they make this argument. But what I hear you saying is this just wasn't argued in the district court so it's really an argument that forfeited. Well, that's exactly right and I'm not sure, even what they're, they're talking about. Well, I take what they're talking about to be, there's a non content based reason for us to look differently a temporary science and non temporary science and it's the nature of the material it's made out of. But you're saying that was not in front of the district court by hearing you right. That's correct, Your Honor. All right. Can I just ask for one clarification before we're finished here you said at the beginning that this is right implied strictly a facial challenge. But both plaintiffs here brought as applied challenges as well did they not. That's correct, Your Honor. And they press those to the court but it looks like the district court just didn't decide that that issue. That's, that's. Okay. Anything else. All right, thanks very much, Mr scringy we'll go ahead and hear from Mr. Rebuttal you have two minutes or Mr Wakefield will. Before you get into what you want to talk about I would like to know. Isn't it the case that security signs warning signs and commercial signs can be illuminated, as long as they follow the illumination regulation and 806 D and if that's the case. Isn't that a content based way in which the temporary personal expression is treated worse than those other categories. I'm sorry, could you repeat that one more time I'm sorry your commercial expression and security and warning signs can be illuminated, if they comply with 806 these limits on illumination of strobe lights. 12am to 6am etc. If that's right, the temporary expression is treated worse than those other categories. So, if the commercial signs that we're referring to our thing that would not be permit exempt. So the way that this ordinance is structured is 805 is all permit exempt signs. Okay. So, to your question, yes, if you're talking about, you know, an on premises sign for the tire shop. Yeah, but good, then it's treated worse than a different category that is defined by a content. The category of a commercial sign commercial signs can be illuminated subject to no strobe lights no 12am to say a couple things like that. Personal expression signs cannot be illuminated. Well, we don't have a case about this is a challenge, it is a facial challenge but you're talking about the application of potentially strict scrutiny on an issue that hasn't been litigated at all right I mean there's no record on. There's no record, if it's a facial challenge, it's a facial challenge this category defined by content is treated worse than commercial, at least with respect to illumination, as well as the duration of limits we were arguing about earlier, it's not defined by content it's defined by its permanency, the non permanent commercial signs can be illuminated. I don't believe so your honor. So you're saying that by definition all commercial signs are permanent. No, no, I'm saying, no, because I think in our category of temporary signs you can have commercial temporary non commercial temporary sign commercial temporary signs could be illuminated. Right. No, because in the, in the section of the ordinance that we're talking about, where temporary signs are defined those standards are in there and it doesn't say anything about illumination. No, I'm looking at see 805 C 805 C three says personal expression signs must be non commercial nature must not be eliminated. But 805 C two for non residential lots, presumably commercial lots. You can have some things and they don't have to meet the personal expression sign requirement. Yeah, I can't speak that directly your honor I think that the commercial signs that can be eliminated are wholly outside of 805 they would be those that are subject to getting permits, it sounds like they're in 805 because we just heard. Judge Davis quote that but let me ask you about the, what I was asking Mr screen she about was durability of materials, something that was argued to the district court as a basis for distinction on content versus non content based analysis. Yeah, the way that you described it to Mr screen she I think is, is probably more accurate which would be yes the answer is yes, but we looked at it from what the whole perspective. Why are temporary signs different, why are they said that was argued to the district court believe it was briefed to the district court. The holiday issue was briefed and argued to the district court right yes and holiday signs can be illuminated. Well, I know the the ordinance does not have a definition of a holiday sign the ordinance is a holiday decoration so it can be, but Merry Christmas, your friend on the other side use that example you don't dispute that Merry Christmas could easily fall within the holiday decorations. I, as I think I answered earlier, potentially a sign that's of non durable material, and is says Merry Christmas or Happy Holidays could could in fact be a personal expression so you could, and you could festoon it. But but if it's so maybe, maybe not. Wait a minute. So, wait, Merry Christmas is, is a personal expression sign not a holiday sign. I think that if you look at the definition of holiday decorations that encompasses the whole list let's make it more difficult. Great. You go up and say, keep Christ and Christmas. Isn't that a personal expression sign. If it's, if it's a holiday sign supposedly there's no numerical limitation right. Correct. But if it's a personal expression sign, and also a holiday sign, then somehow there is a numerical limitation. If there is a personal expression sign it there would be a numerical limitation, but that's because it's a temporary sign, or not because it's a personal expression science because a bunch of photos in the record of skeletons and things that look a whole lot larger than the six square feet. All right. The borough does not appear to be enforcing or applying this or granted we have this facial versus l plot but if we're in as applied territory the borough does not appear to be treating the holiday signs as personal expression science then I don't think we have much in the record at all but how the borough is treating things we don't. And so either there's a vagueness problem or there's a selective enforcement problem or some, I'm not sure what doctrine it falls under, but it doesn't look as if your position advanced litigation that these are all a subset of personal expression is the way the borough is enforced. Yeah, I don't I can't do the I don't think we know that. Isn't there a vagueness problem as soon as you say, you know, it could be personal expression, it could be holiday. Merry Christmas. Yeah, it could be either Christmas, that could be either, either or both. Well, I don't know. Again, we don't have a ruling from the trial judge on vagueness but I think, I mean, well vagueness has been argued to us are you suggesting that if we're wondering about that we should send it back for a ruling in the first instance, I think that's within the court's discretion if you if you so choose but there is there have been arguments made from both sides, fully briefed on Vegas. When I look at these signed regulations. I mean, it's, it's like going through the tax code. It's one thing overlay on another on another on another and everyone's has to make very fine distinctions, who's an enforcement officer who has some understanding of these regulations, but no one really has a complete understanding, most likely, and you just wonder if there isn't a vagueness issue in terms of when do I enforce when don't I enforce. It's kind of on feel. And that doesn't work real well. We've submitted that the discretion of the zoning officer is cabined in this case by various things within the zoning ordinance in terms of size and timing and things like that. So, yeah, versus non skeletons. It's, it's pretty, it's a, we've got you had a little bit of an unfair advantage Mr where you go because you're right there's not a lot of record on that and the judgment of the district court below was on facial and not as applied, but I think the questions indicate to you that there's the vagueness issue is somewhat problematic, perhaps, it's certainly I admit it's it's not an easy situation but I think we don't want to lose sight of it. And I think that's kind of, you know, Justice Lee said municipalities aren't powerless to regulate science within their jurisdiction. That's true, we can all agree on that. Okay, so we're going to ask that the judgment be reversed and remanded Thank you. All right. Thank you. And thank you Mr scrunchie we've got the matter under advisement. Oh, and could I ask the two parties to please coordinate and split the cost of preparing a transcript of today's argument for our benefit would be of assistance. Thank you.